1
2
3
4
5
6

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

7
8

| | |
|---|---|
| JASPER RAY ABBATELLO,<br><br>          Plaintiff,<br><br>     v.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of Social Security,<br><br>          Defendant. | Case No. 1:12-CV-01969-SMS<br><br>ORDER AFFIRMING AGENCY'S<br>DENIAL OF BENEFITS AND ORDERING<br>JUDGMENT FOR COMMISSIONER<br><br>(Doc. No. 1) |

9
10
11
12
13
14
15

        Plaintiff Jasper Ray Abbatello, by his attorneys, Law Offices of Lawrence D. Rohlfing, seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for supplemental security income ("SSI") pursuant to Title XVI of the Social Security Act (the "Act").  *See* 42 U.S.C. § 301 *et seq.*  The matter is before the Court on the parties' cross-briefs, which were submitted, without oral argument, to the Honorable Sandra M. Snyder, U.S. Magistrate Judge.  Following a review of the complete record and applicable law, the Court finds the decision of the Administrative Law Judge ("ALJ") to be supported by substantial evidence.

16
17
18
19
20
21
22

I.   **Procedural History**

        On July 14, 2000, Abbatello applied for supplemental security income.  In his application, Abbatello alleged disability beginning in his childhood, on June 13, 1991.  The Commissioner initially approved the claim.  Abbatello has since attained age 18.  As required under the Act, Abbatello's eligibility for disability benefits was redetermined under the rules for determining disability in adults when he attained age 18.  *See* 42 U.S.C. § 1614(a)(3)(H).

23
24
25
26
27
28

On May 4, 2010, the Commissioner determined that Abbatello was no longer disabled as of May 1, 2010.  His claims were thus denied on August 31, 2010.  On May 18, 2010, Abbatello requested reconsideration.  After a disability hearing, the State agency Disability Hearing officer upheld the decision.  On September 29, 2010, Abbatello filed a timely written request for a hearing.

Abbatello appeared with representation and testified at a hearing on November 9, 2011.  At that same hearing, Abbatello testified that he had obsessive compulsive disorder ("OCD"), attention deficit hyperactivity disorder ("ADHD"), and anxiety disorder.  Abbatello was represented by Diana Wade, a non-attorney.  No other individuals testified on behalf of Abbatello.  An impartial vocational expert, Randi A. Langford-Hetrick, also appeared and testified.

On December 1, 2011, Administrative Law Judge Jeffrey A. Hatfield denied Abbatello's application.  On October 10, 2012, the Appeals Council denied review.  On December 3, 2012, Abbatello filed a complaint seeking this Court's review.

## II.   Administrative Record

### Plaintiff's testimony (November 9, 2011).

Plaintiff Jasper Ray Abbatello, born June 13, 1991, lived with his parents.  Abbatello completed high school equivalency or a GED.  He has no prior work experience.

Abbatello testified that he can bathe and dress himself and prepare simple meals.  As to his daily habits, he reported that he spent considerable time on the computer, online, and communicating with friends over the computer.  Abbatello indicated that he plays video games daily, watches videos, and plays online and video games without difficulty.   In prehearing reports, Abbatello stated that his daily activities include the following: taking a shower, getting cleaned up, and getting ready for the day, which consists of "gaming online."  Abbatello reported that he "sometimes" goes on short trips.  The record shows that Abbatello is able to drive a car and go shopping for food, clothes and electronics.  Abbatello stated that he cleans his room and does laundry "sometimes."

Abbatello reported previously receiving mental health treatment, but no current use of psychotropic medication.  He testified that he suffers from anxiety and cannot "be around people." In pre-hearing reports, he stated that he does not do house or yard work because he has OCD and does not want to get dirty.  Abbatello also stated that he does not like being touched by other people or touching anything "not clean."  He testified he is five feet six inches tall and weighs 241 pounds. Abbatello reported that he is not currently working and has no work experience.

**Disability Appeal Report.**

In a disability appeal report dated September 12, 2010, Abbatello complained of not sleeping well and experiencing "more stress."  He also reported that "at night my gout hurts my arms, hands, legs, hips, [and] feet."  Noting a change to his physical or mental limitations since his last completed disability report, he stated that "I have been depressed and wanted to kill myself," since May 3, 2010.  Abbatello wrote that his "bones hurt."  He described his daily activities such that he will not "shower for a week . . . don't clean my room or cook for myself my mom or dad does."  He reported that "I stay online most of the time or watch movies."  In the remarks, Abbatello wrote "my problems have been the same since I was a young child.  I still have the same mental and phy[sical] problems I have always had. . . I do not feel I can be in a work situation because of my OCD, stress and panic attacks. . . I have a lot of pain my joints."  Finally, Abbatello wrote, "Without my SSI, I will not be able to live and pay my bills."

In an earlier disability report dated May 17, 2010, Abbatello wrote that he was "worse" and had gone to the emergency room due to a "mental breakdown."  He reported trouble adjusting to his medications.  He noted that after that visit to the hospital, he had started seeing Dr. Shapiro. Describing his daily activities, he wrote that "I get withdrawn and stay in my room."

**Third Party Adult Function Report.**

In his January 14, 2010 and June 2, 2010 third-party adult function reports, Abbatello's step-father, Donald Dean Hoffman, wrote that Abbatello had some physical problems that prevented most

ordinary tasks, and that Abbatello could only walk three blocks.  Mr. Hoffman noted that Abbatello did not perform house and yard work because of his OCD.  Mr. Hoffman reported that Abbatello, when not sleeping, is on the internet, but has no problems with personal care.  Mr. Hoffman stated that Abbatello finishes what he starts and can follow written instructions.  Mr. Hoffman indicated that apart from SSI, he and Abbatello's mother are Abbatello's sole support.

### Teacher Questionnaire

The ALJ considered a January 12, 2010 report by Theresa Blue, a resource specialist.  Her report indicates that Abbatello began seeing her once a week for one hour per week, which at some point reduced to approximately once every four to six weeks.  She wrote that Abbatello's attendance was "very sporadic," and that he "seldom would attend [his scheduled meetings with her]."  She noted that Abbatello has an obvious problem understanding school and content vocabulary, as well as with recalling and applying previously learned material.  Ms. Blue opined that Abbatello has a very serious problem with the following: reading and comprehending written material; comprehending and performing math problems; providing organized oral explanations and adequate descriptions; expressing ideas in written form; learning new material; and applying problem-solving skills in class discussion.  She also reported that Abbatello has a serious problem with attendance, completing tasks, and self-care.

### Medical Evidence.

The ALJ properly considered the following medical records and opinions.  The medical evidence considered by the ALJ shows that Abbatello has a history of attention deficit hyperactivity disorder and anxiety.

A February 20, 2010 internal medicine consultation report by Jagvinder Singh, M.D., reflects Abbatello's complaints of OCD, muscle pain, and fatigue.  By his report, Dr. Singh indicated that Abbatello has no problems with dressing, grooming, or bathing himself, and that he is able to drive, do dishes, laundry, take out the trash, and take short walks.  The record further reveals that Abbatello

was not taking medication at the time.  Dr. Singh's noted that the results of Abbatello's physical exam were normal.  At that time, Dr. Singh opined that Abbatello had no physical limitations.

A psychological evaluation dated April 11, 2010, by Rosa Colonna, Ph.D. Psy., reveals that Abbatello has had a history of ADHD and anxiety.  Abbatello reported to Dr. Colonna that he was not taking any type of medication, nor was he in treatment of any kind.  The ALJ highlighted that Dr. Colonna's assessment showed a generally normal mental status examination, other than Abbatello's mildly dysthymic mood, slight constricted affect, mildly diminished memory and concentration, and poor general fund of knowledge.  The ALJ noted that Dr. Colonna's evaluation included test results that put Abbatello in a low-average functioning range.

Dated July 28, 2010, an annual mental health assessment shows that Abbatello had the following symptoms at that time: lack of motivation, sadness, anxiety/hypervigilance, obsessive about dirt and germs, compulsive about repeatedly washing hands, trouble focusing unless online, isolates from others, poor social skills, and irritability.  That record details that Abbatello did not have a stable medication regimen and thus continued to require a psychiatrist's oversight.

On August 19, 2010, R. Paxton, M.D., the State Agency's medical consultant, performed an Residual Functional Capacity ("RFC") assessment.  Dr. Paxton reported that Abbatello is moderately limited in the ability to do the following: understand, remember, and carry out detailed instructions and maintain attention and concentration for extended periods.

In a report dated September 22, 2011, Jagdeep Garewal, M.D., noted the following signs and symptoms relative to Abbatello: anhedonia, generalized persistent anxiety, mood disturbance, difficulty thinking or concentrating, pathological dependence and aggressivity, recurrent obsessions or compulsions that are a source of marked distress, and sleep disturbance.  Dr. Garewal opined that Abbatello had severe impairments in daily activities and poor social functioning, task completion, and adaptation to work.  Dr. Garewal stated that Abbatello was seriously limited, but not precluded from the ability to do the following at that time: remember work-like procedures, maintain attention

for two hour segments, sustain ordinary routine without special supervision, complete a normal workday and workweek without interruptions, understand and remember detailed instructions, deal with stress of semiskilled and skilled work, and adhere to basic standards of neatness and cleanliness.

**Vocational expert testimony.**

Randi A. Langford-Hetrick testified at the November 9, 2011 hearing as a vocational expert. She testified that based on Abbatello's RFC, he would be able to perform the requirements of representative occupations such as hand packager (DOT 920587018, SVP 2, medium, with 8,000 jobs locally and 150,000 jobs nationally); cleaner II (DOT 919687014, SVP 2, medium with 4,000 jobs locally and 90,000 nationally); house worker (DOT 301687010, SVP 2, medium with 30,000 jobs locally and 700,000 nationally).  In comparing the claimant's RFC with the physical and mental demands of this work, the ALJ concluded that Abbatello was able to perform it as actually and generally performed.

## II.    Discussion

The ALJ found that Abbatello met the insured status requirements of the Act as a child for the month preceding the month in which he attained age 18.  Abbatello attained age 18 on June 13, 2009.  Abbatello had not engaged in any substantial gainful activity since reaching the age of maturity, and had no past relevant work.  The Commissioner notified Abbatello that he was found no longer disabled as of May 1, 2010.  The ALJ determined that, since May 1, 2010, Abbatello had the following severe impairments: OCD, ADHD, and anxiety.  The ALJ recognized that the listed impairments impose more than a minimal effect on Abbatello's ability to perform basic work activities.  However, the ALJ determined that Abbatello's mental impairments, considered singly and in combination, do not meet or medically equal the criteria set forth in the listing of impairments.  *See* 20 C.F.R. pt. 404, subpt. P, app. 1.  The ALJ found that Abbatello's mental impairments do not result in at least two of the following, where a marked limitation means more

than moderate but less than extreme: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration.

Based on his careful review of the entire record, the ALJ determined that Abbatello has merely mild restriction in his daily living activities, and moderate difficulties in his social functioning and concentration, persistence, or pace. The ALJ noted that Abbatello has had no episodes of decompensation of extended duration. The ALJ determined that Abbatello had the RFC to perform a full range of work at all exertional levels but with the following nonexertional limitations: simple, routine repetitive tasks; low stress tasks, defined as permitting occasional decision making, exercise of judgment on the job, or changes in the work setting; occasional interaction with the public and co-workers; and superficial, nonconfrontational, no arbitration, and no negotiation types of activities. The ALJ concluded that Abbatello was not disabled because he could perform a significant number of jobs given his RFC.

## A.   **Legal Standards**

To qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity because of a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must demonstrate a physical or mental impairment of such severity that he is not only unable to do his previous work, but, considering age, education, and work experience, cannot engage in any other substantial gainful work existing in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).

To encourage uniformity in decision making, the Commissioner has promulgated regulations prescribing a five-step sequential process for evaluating an alleged disability. 20 C.F.R. §§ 404.1520 (a)-(f); 416.920 (a)-(f). The process requires consideration of the following questions:

7

| | |
|---|---|
| Step one: | Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two. |
| Step two: | Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate. |
| Step three: | Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four. |
| Step four: | Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five. |
| Step five: | Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled. |

*Lester v. Chater*, 81 F.3d 821, 828 n. 5 (9th Cir. 1995).

## B. <u>Scope of Review</u>

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, a court must determine whether substantial evidence supports the Commissioner's decision.  42 U.S.C. § 405(g).  Substantial evidence means "more than a mere scintilla" (*Richardson v. Perales*, 402 U.S. 389, 402 (1971)), but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975).  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at 401.  The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's decision.  *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must apply the proper legal standards.  *See, e.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).  This Court must uphold the ALJ's determination that the claimant is not disabled if the ALJ applied the proper legal standards and the ALJ's findings are supported by substantial evidence.  *See Sanchez v. Secretary of Health and Human Services*, 812 F.2d 509, 510 (9th Cir. 1987).  "Where the evidence as a whole can support either outcome, we may not substitute our judgment for the ALJ's."  *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).

### C.   **Physicians' Opinions**

Plaintiff challenges the ALJ's analysis of his credibility, contending that the ALJ erred in rejecting his subjective reports of disability and rejecting the opinion of Dr. Garewal in favor of the opinions of Drs. Singh, Colonna, and Paxton.  Moreover, the Commissioner replies that the ALJ did not err in relying on the opinions of Drs. Singh, Colonna, and Paxton, who, in contrast to Dr. Garewal, were consistent with the objective evidence of record and the conservative treatment provided to Abbatello, and in limiting the weight he gave to Dr. Garewal's opinion, and rejecting Abbatello's extreme subjective reports.  Relative to Abbatello, Dr. Singh could find "no physical findings or limitations."  In sum, the Commissioner contends that Abbatello's subjective complaints are greater than the objective findings and not consistent with the objective evidence.

**Plaintiff's credibility.**

Before considering medical opinion, the Court finds it relevant to consider a plaintiff's credibility, an important factor in evaluating his claims.  The ALJ found that although Abbatello's reported symptoms of OCD, ADHD, and anxiety were somewhat consistent with objective medical evidence, his reports of the intensity, persistence, and limiting effects of his symptoms were not fully credible, nor were his reports of physical fatigue, weakness, and muscle pain for which he has not received any treatment.

An ALJ is not "required to believe every allegation of disabling pain" or other non-exertional requirement.  *Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007), *quoting Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).  "[T]he ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."  *Lester*, 81 F.3d at 834, *quoting Varney v. Secretary of Health and Human Services*, 846 F.2d 581, 584 (9th Cir. 1988).  He or she must set forth specific reasons for rejecting the claim, explaining why the testimony is unpersuasive.  *Orn*, 495 F.3d at 635.  *See also Robbins v. Social Security Admin.*, 466 F.3d 880, 885 (9th Cir. 2006). The credibility findings must be "sufficiently specific to permit the court to conclude that the ALJ

9

did not arbitrarily discredit claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002).

When weighing a claimant's credibility, the ALJ may consider the claimant's reputation for truthfulness, inconsistencies in claimant's testimony or between his testimony and conduct, claimant's daily activities, claimant's work record, and testimony from physicians and third parties about the nature, severity and effect of claimant's claimed symptoms. *Light v. Social Security Administration*, 119 F.3d 789, 792 (9th Cir. 1997). The ALJ may consider "(1) ordinary techniques of credibility evaluation, such as claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008), *quoting Smolen v. Chater*, 80 F.3d 1273 (9th Cir. 1996). If the ALJ's finding is supported by substantial evidence, the Court may not second-guess his or her decision. *Thomas*, 278 F.3d at 959.

In this case, the ALJ noted Plaintiff's inconsistencies in his claims to the agency and his representations to other physicians and their objective records. For example, soon after May 1, 2010, the date by which the Commissioner had determined that Abbatello was no longer disabled, on May 3, 2010, Abbatello presented to the emergency room with complaints of thoughts of "hurting himself," but was not admitted. He was discharged the same day. In another example, the ALJ noted that the treating record reveals that Abbatello claimed that he "just needs medication to stay on track, calm, and stable." However, the treating record shows that Abbatello has never been in a mental hospital or facility, and several medical professionals noted that "he was not in any type of [psychiatric] treatment." *See*, e.g., Ex. 4F, p. 2. The record shows that Abbatello's medication compliance is merely fair. Furthermore, the record illustrates that Abbatello does not have a stable

10

medication regimen and continues to require a psychiatrist's oversight, which, the ALJ emphasized, is inconsistent with Abbatello's prior statements that he needs medication to remain stable.

Moreover, Abbatello repeatedly complained of his physical pain, stating "my bones hurt" and that his "gout" caused him pain. Yet, the objective record fails to support any required treatment, or that Abbatello had ever been diagnosed with a physical limitation that would explain his complaints. Indeed, nearly every medical record noted that Abbatello moved well, without limitation, and had no difficulty in self-care. Although Abbatello reported to the Commissioner that he does no house-work, the record is replete with instances of doctors noting that Abbatello is able to do housework, can drive, shop, operate a computer, and is capable of his own financial management. In contrast, Abbatello reported to the Commissioner that his parents perform these functions for him.

Dr. Colonna summarized that Abbatello would be able to carry out detailed instructions "without difficulty," would be able to make simple work-related decisions "without special supervision," and could interact with supervisors "appropriately." Significantly, Abbatello's chief complaint seems to be depression, yet Abbatello self-reports that he is not taking any type of medication nor is he in any type of treatment program. The ALJ gave Dr. Colonna's opinion in her psychological evaluation significant weight because it is generally supported by the record as a whole.

The ALJ gave Dr. Garewal's opinion little weight, because, the ALJ explained, Dr. Garewal's opinion was not supported by the record. The ALJ noted, for example, that Dr. Garewal stated in his September 2011 report that Abbatello had mood disturbances, marked distress, poor social functioning and severe impairments. However, the ALJ noted that Abbatello had not been on a consistent medication regimen for this, or any, purpose. Although Dr. Garewal opined that Abbatello had severe impairments in daily activities, the ALJ emphasized that Dr. Garewal's opinion conflicted with Abbatello's testimony that he is able to perform daily activities without impairment,

such as successfully providing self-care, taking a shower, going on short trips, driving, shopping for food, clothes, and electronics, cleaning his room, and sometimes doing laundry.

Further, this Court notes that not only does Dr. Garewal's opinion stand in contrast to those of other physicians, but his opinion is based on Abbatello's subjective reports subsequent to the Commissioner's adverse benefits decision.  At bottom, Dr. Garewal's opinion is fact-dependent on subjective Abbatello's subjective such that, ultimately, it is Abbatello's credibility at issue.  On that basis, to the extent that Abbatello has severe impairments in daily activities and adaptation to work, the ALJ acknowledged that he gave little weight to Dr. Garewal's opinion because it is not supported by the record.

For similar reasons, the ALJ gave little if any weight to Ms. Blue's teacher assessment because of her limited and infrequent contact with Abbatello.

In addition to his OCD, ADHD, and anxiety, Abbatello also complained of fatigue and pain, although objective medical records do not indicate any physical medical conditions or physical limitations.  The ALJ noted that he gave significant weight to Dr. Singh's opinion that Abbatello has "no physical limitation" because it is supported by the record as a whole.

In short, the record supports the ALJ's conclusion that Abbatello lacked credibility.  Because of his lack of credibility, every medical opinion presented must be evaluated in light of its dependence on Abbatello's self-serving representations.  The ALJ properly did so, limiting his reliance on opinions based on Abbatello's subjective representations of his mental and physical condition.

**Expert medical opinions.**

Physicians render two types of opinions in disability cases: (1) clinical medical opinions regarding the nature of the claimant's impairments and (2) opinions on the claimant's ability to perform work.  *See Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998).  "An ALJ is not bound by an expert medical opinion on the ultimate question of disability."  *Tomasetti*, 533 F.3d at 1041;

S.S.R. 96-5p.  Three types of physicians may offer opinions in social security cases: "(1) those who treat[ed] the claimant (treating physicians); (2) those who examine[d] but d[id] not treat the claimant (examining physicians); and (3) those who neither examine[d] not treat[ed] the claimant (nonexamining physicians)." *Lester*, 81 F.3d at 830.  A treating physician's opinion is generally entitled to more weight than the opinion of a doctor who examined but did not treat the claimant, and an examining physician's opinion is generally entitled to more weight than that of a nontreating physician. *Id.*  The Social Security Administration favors the opinion of a treating physician over that of nontreating physicians. 20 C.F.R. § 404.1527; *Orn*, 495 F.3d at 631.  A treating physician is employed to cure and has a greater opportunity to know and observe the patient. *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987).  Nonetheless, a treating physician's opinion is not conclusive as to either a physical condition or the ultimate issue of disability. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

An ALJ must determine a claimant's RFC based on "all relevant evidence in the record." *Valentine v. Commissioner of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009).  The ALJ must set forth a detailed and thorough factual summary, address conflicting clinical evidence, interpret the evidence and make a finding. *Magallanes*, 881 F.2d at 751-55.  The ALJ need not give weight to a conclusory opinion supported by minimal clinical findings. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999); *Magallanes*, 881 F.2d at 751.  Although an ALJ is not bound by uncontroverted opinions rendered by a plaintiff's physicians regarding the ultimate issue of disability, he or she cannot reject them out of hand, but must set forth clear and convincing reasons for rejecting them. *Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993).  The ALJ must tie the objective factors of the record as a whole to the opinions and findings that he or she rejects. *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988).  Questions of credibility and resolution of conflicts in the testimony are functions solely of the Secretary. *Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996), *cert. denied*, 519 U.S. 1113 (1997).

The ALJ found that Abbatello had no work history.  His severe impairments were OCD, ADHD, and anxiety.  None of these impairments, or any combination of these impairments, met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926.  Considering Abbatello's age, education, work experience, and residual functional capacity, jobs exist in significant numbers in the national economy that Abbatello, since May 1, 2010, was capable of performing.  *See* 20 C.F.R. §§ 416.969 and 416.969(a).  Accordingly, the ALJ found that Abbatello was not disabled, as defined by the Social Security Act.

Plaintiff contends that the ALJ erred by favoring the objective opinions of examining and non-examining physicians, who agree that Abbatello is not disabled, over Dr. Garewal's opinion and Abbatello's subjective opinion that he is disabled.  The ALJ carefully analyzed the various expert opinions regarding Abbatello's RFC, including those of his treating physicians; the internal medicine consultant, Dr. Singh; the consultative physician, Dr. Paxton; the psychologist, Dr. Colonna; and of the non-examining physicians, as well as the treatment records of Dr. Garewal.  The ALJ explained in detail his preference for the opinion of the majority of physicians whose treatment records and consultative reports contemplated Abbatello's various symptoms and diagnoses, the objective medical evidence, and his treatment regime.

The ALJ limited the weight he gave to Dr. Garewal's and Abbatello's opinion since it rested primarily on Abbatello's own unreliable account of his medical history and his reports of symptoms greater than and inconsistent with the objective medical records.  Similarly, he gave little weight to Mr. Hoffman's third-party report since, as Abbatello's sole support, he had a financial interest in Abbatello receiving benefits and his opinions were not supported by objective medical evidence.

This Court agrees with the ALJ's analysis.  Substantial evidence supported his determination to favor the physicians' objective opinions and to reject Abbatello's subjective opinion.  Since his analysis and conclusion were well articulated and supported by substantial evidence in the record,

the Court concludes that the ALJ did not err in his assessment of the relative credibility of Plaintiff and the various medical experts, nor in his decision to favor the opinion of the majority of physicians over that of Plaintiff.

## III.    Conclusion and Order

The Court finds that the ALJ applied appropriate legal standards and that substantial evidence supported the ALJ's determination that Plaintiff was not disabled.  Accordingly, the Court **DENIES** Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of Court is **DIRECTED** to enter judgment in favor of the Commissioner and against Plaintiff.

IT IS SO ORDERED.

Dated:   __June 25, 2014__                          _____**/s/ Sandra M. Snyder**
                                                        UNITED STATES MAGISTRATE JUDGE